THOMAS, Judge.
 

 Robert Earl Routzong (“the father”) appeals from a judgment finding him in contempt for failing to comply with the terms of a judgment divorcing him from Marisa Lynne Routzong Baker (“the mother”) and awarding the mother $2,200. We affirm.
 

 The parties were divorced in 2005. The divorce judgment provided that the parties would have “joint custody” of the parties’ children and that the mother would have “primary custody.” The parties had 2 sons, who were, at the time of trial in the present case, 11 and 15 years old. The divorce judgment incorporated an agreement of the parties that included, among other provisions, the following at paragraph nine:
 

 
 *804
 
 “9. The parties agree that the [father] will pay child support in the amount of $410.00 a month per child. Any expenses such as braces, school expenses and extracurricular activities incurred in any month will be shared equally by the [mother] and the [father]. The [father] agrees to immediately reimburse the [mother] for any payments not made by the [father] within 10 days after the [mother] provides receipt of payment.”
 

 In 2007, the mother filed a contempt petition, alleging that the father had, since the time of the divorce, failed to reimburse her for his share of the children’s medical expenses and extracurricular activities, which, she said, amounted to $2,860. The court conducted ore tenus proceedings on December 4, 2007, and February 4, 2008. The mother testified that she considered the children’s extracurricular activities to encompass “anything they do outside the school day, whether it’s an optional science project or fair, or a summer camp, football, baseball, basketball, church.” The father took issue with the mother’s interpretation of the term “extracurricular activities,” and he objected to paying for any such activities because, he said, he had not been consulted by the mother
 
 before
 
 she spent the money. The father testified that “[j]oint custody mean[s] I have equal say in anything extra and above regular child support spent on the child.” When the trial court asked the father whether he disagreed with the parties’ sons being involved in activities such as music, sports, or church activities, the father answered:
 

 “Not necessarily. But I needed to be consulted so that I could make the decision whether I could afford it or not. I have approximately $500 a month after I pay all my bills and child support.
 

 “This agreement never intended to give [the mother] an open checkbook to spend my money however she [saw] fit.”
 

 The mother testified that the extracurricular activities for which she was seeking a 50% expense reimbursement from the father were the same type of activities in which the children had been participating at the time of the divorce.
 

 On February 25, 2008, the trial court entered a lengthy and comprehensive judgment determining, in pertinent part, the following:
 

 “The Court hei'eby finds the language of the agreement to be clear, conspicuous and unambiguous as to its meaning and the responsibility of good faith compliance. The Court finds the [father’s] excuse for his failure to pay said timely reimbursement in compliance with the agreement to be disingenuous.
 

 “The Court interprets the agreement and finds that the parties intended for the word ‘any’ to have its usual and customary definition. The Court interprets and defines the word ‘expenses’ as those expenses that are paid and incurred on behalf of the minor children and which are other than those expenses to be covered by the payment of child support. The Court interprets and defines the phrase ‘such as’ to be intended by the parties to give an example or illustration of an expense covered under the agreement. The Court finds that the phrase ‘such as’ is not intended to be a term of limitation.
 

 “Further, in consideration of the entire context of the agreement and what is in the best interest of the minor children, the Court finds the [mother’s] arguments persuasive in that the parties intended for out of pocket medical and dental expenses to be covered in this reimbursement agreement as given by the example of ‘braces.’ The Court does
 
 *805
 
 not interpret the word ‘braces’ to limit the reimbursement agreement simply to braces, while leaving the entire burden of other out of pocket medical or dental expenses to be carried solely by the [mother].
 

 “Further, the Court interprets the agreement and finds that the parties intended for the phrase ‘school expenses’ and ‘extracurricular expenses’ to have its usual and customary definition. The Court finds that ‘school expenses’ is intended by the parties in their agreement to cover those expenses required for the minor children’s participation in school activities. The Court finds that ‘extracurricular expenses’ is intended by the parties to cover those expenses required for the minor children’s participation in activities outside of school. The Court finds that the activities set forth for reimbursement under these categories are reasonable. The Court finds that the expenses and activities set forth for reimbursement were either being incurred in a similar manner at the time of the divorce or that said expenses and activities were reasonably anticipated to be incurred and they were intended by the parties to be covered under their agreement.
 

 “The Court finds that the language of the parties’ agreement shows a reasonable anticipation of school expenses and extracurricular expenses to be incurred by the parties at the time of their agreement. The Court finds that these expenses, for which the [mother] has asked the [father] for reimbursement, are expenses which are customarily and reasonably expected and these expenses or activities are not unusual or extraordinary nor are the expenses or activities which are associated with school or extracurricular events considered by the Court to be extravagant or unduly burdensome on the [father] since the parties are equally proportioning those expenses for reimbursement. The Court finds that it is in the best interest of the minor children for their parents to encourage them to participate in said activities and the parties should share in these expenses equally as they originally agreed.
 

 “Further, the Court finds that the phrase ‘receipt of payment’ does not limit, restrict or require the [mother], as the primary custodial parent, to provide only written receipt of payment as the only acceptable form of proof and actual notice of expenses for reimbursement covered under the parties’ agreement. The Court finds that the parties’ agreement contemplates that the [mother’s] burden is to place the [father] on reasonable actual notice that reasonable expenses, as contemplated under their agreement, have either been incurred by the primary custodial parent or that reasonable expenses are expected to be incurred. The Court finds that the [mother] complied with this actual notice requirement in the past by both verbal and written notice of payment to the [father]. Further, the Court cannot find anywhere in the agreement that the parties agreed and intended for the [mother], the primary custodial parent, to get permission from the [father], the noncustodial parent, for each and every nonextraordinary expense which was contemplated to be covered in their agreement.
 

 “The Court has reviewed the submissions of the parties and considered the testimony and demeanor of the parties and finds that the [father] has failed in good faith to reasonably and timely reimburse the [mother] for expenses which total $2200.00.”
 

 Standard of Revietv
 

 In
 
 R.G. v. G.G.,
 
 771 So.2d 490, 494 (Ala.Civ.App.2000), this court set out the standard of review applicable to this case:
 

 
 *806
 
 “ ‘[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract.’
 
 Smith v. Smith,
 
 568 So.2d 838, 839 (Ala.Civ.App.1990). A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed.
 
 Sartin v. Sartin,
 
 678 So.2d 1181 (Ala. Civ.App.1996). ‘The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.’
 
 Id.,
 
 at 1183. Whether an agreement is ambiguous is a question of law for the trial court.
 
 Wimpee v. Wimpee,
 
 641 So.2d 287 (Ala.Civ.App.1994). An agreement that by its terms is plain and free from ambiguity must be enforced as written.
 
 Jones v. Jones, 122.
 
 So.2d 768 (Ala.Civ. App.1998). An ambiguity exists if the agreement is susceptible to more than one meaning.
 
 Vainrib v. Downey,
 
 565 So.2d 647 (Ala.Civ.App.1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous.
 
 Id.
 
 Finally, if a provision of an agreement is certain and clear, it is the duty of the trial court to determine its meaning, and the court’s determination is afforded a heavy presumption of correctness and will not be disturbed unless it is clearly erroneous.
 
 Id.”
 

 This court reviews de novo a trial court’s determination with respect to whether an agreement incorporated into a divorce judgment is ambiguous.
 
 Meyer v. Meyer,
 
 952 So.2d 384, 391 (Ala.Civ.App.2006);
 
 Smith v. Smith,
 
 892 So.2d 384, 387-88 (Ala.Civ.App.2003).
 

 I.
 

 Citing
 
 Smith v. Smith,
 
 887 So.2d 257 (Ala.Civ.App.2003), the father acknowledges that the divorce judgment awarding the parties “joint custody” but awarding the mother “primary custody” must be construed to mean that the parties have joint
 
 legal
 
 custody and that the mother has sole
 
 physical
 
 custody of the children. Section 30-3-151(2), Ala.Code 1975, defines “joint legal custody” as follows:
 

 “Both parents have equal rights and responsibilities for
 
 major decisions
 
 concerning the child, including, but not limited to, the education of the child, health care, and religious training. The court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.”
 

 (Emphasis added.) The father maintains that his having “joint legal custody” of the children requires the mother to consult with him before she spends money on the children’s “education, health care, and religious training,” as well as other issues concerning the children, such as their involvement in extracurricular activities. He asserts that the trial court erred by failing to consider the meaning of the term “joint legal custody” as it relates to the provisions of paragraph nine. The trial court’s judgment indicates that it
 
 did
 
 consider the meaning of “joint legal custody” when it construed the provisions of paragraph nine. By finding that the expenses for which the mother sought reimbursement were “customarily and reasonably expected,” rather than “unusual or extraordinary,” the trial court implicitly rejected the father’s argument that the mother had, without consulting him, made “major decisions” within the meaning of § 30-3-151(2). Moreover, the trial court explicitly rejected the father’s argument that he had a right to be consulted beforehand about the expenses for which the mother was seeking reimbursement when it determined:
 

 “[T]he Court cannot find anywhere in the agreement that the parties agreed and intended for the [mother], the primary custodial parent, to get permission
 
 *807
 
 from the [father], the noncustodial parent, for each and every nonextraordi-nary expense which was contemplated to be covered in their agreement.”
 

 It is evident that the trial court’s decision was based on its finding that the expenses the mother submitted to the father were for the type of activities in which, the parties contemplated at the time of the divorce, the children would participate after the divorce. Hence, the trial court was authorized to find that prior consultation between the parents as to the propriety of the expenses for such activities was unnecessary because the parents had already come to a meeting of the minds regarding the children’s extracurricular activities. The trial court specifically found that the expenses
 

 “for which the [mother] has asked the [father] for reimbursement, are expenses which are
 
 customarily and reasonably expected and these expenses or activities are not unusual or extraordinary.”
 

 (Emphasis added.)
 

 As a general proposition, we agree with the father that a right to be consulted about expenses that are
 
 not
 
 “customarily and reasonably expected,” but that are “unusual or extraordinary,” is implicit in the concept of “joint legal custody.” Section 30-3-153, Ala.Code 1975, provides:
 

 “(a) In order to implement joint custody, the court shall require the parents to submit, as part of their agreement, provisions covering matters relevant to the care and custody of the child, including, but not limited to, all of the following:
 

 “(1) The care and education of the child.
 

 “(2) The medical and dental care of the child.
 

 “(3) Holidays and vacations.
 

 “(4) Child support.
 

 “(5) Other necessary factors that affect the physical or emotional health and well-being of the child.
 

 “(6)
 
 Designating the parent possessing primary authority and responsibility regarding involvement of the minor child in academic, religious, civic, cultural, athletic, and other activities, and in medical and dental care if the parents are unable to agree on these decisions. The exercise of this primary authority is not intended to negate the responsibility of the parties to notify and communicate with each other as provided in this article.
 

 “(b) If the parties are unable to reach an agreement as to the provisions in subsection (a), the court shall set the plan.”
 

 (Emphasis added.) Section 30-3-153 provides that if the parties cannot agree on a “parenting plan,” designating which parent has the “primary authority and responsibility regarding involvement of the minor children] in academic, religious, civic, cultural, athletic, and other activities, and in medical and dental care,” then the trial court is required to set a “parenting plan.” This court has previously held that the parenting-plan requirement of § 30-3-153 is applicable only to joint-custody arrangements,
 
 i.e.,
 
 when the parties have joint legal custody
 
 and
 
 joint physical custody.
 
 See Ratliff v. Ratliff,
 
 5 So.3d 570, 585 (Ala.Civ.App.2008). We have never held, however, that, in the absence of a joint-custody arrangement, the custodial parent has no duty to consult with the noncustodial parent about issues “regarding involvement of the minor children] in academic, religious, civic, cultural, athletic, and other activities.” To the contrary, this court has indicated that sole physical custody implies “
 
 ‘primary responsibility
 
 of care and control.’ ”
 
 Moncrief v. Gilbert,
 
 675 So.2d 895,
 
 *808
 
 896 (Ala.Civ.App.1996) (emphasis added). As § 30-3-153(a)(6) cautions, however, “[t]he exercise of this primary authority is not intended to negate the responsibility of the parties to notify and communicate with each other ....”
 

 We conclude that when parents have joint legal custody of their children and one parent has sole physical custody, the parents have the duty to “notify and communicate with each other” about issues concerning the children. Thus, if the trial court’s judgment could be read to allow the mother to make any and all decisions with respect to the children’s extracurricular activities without ever consulting the father, it would be erroneous. We do not believe, however, that the judgment in this case can be read so broadly. Instead, paragraph nine of the parties’ agreement must be considered, as it was in the trial court’s judgment, in light of what the parties contemplated at the time of the divorce — that notification and communication as to the type of extracurricular activities in which the children would participate was unnecessary because the parties were in apparent agreement on that issue at the time of the divorce.
 

 We affirm the award to the mother of $2,200, representing the father’s share of the expenses for items enumerated in paragraph nine. Although the father was not consulted about all the expenditures, he presented no evidence indicating that, if he had been consulted about a particular expenditure, he would have vetoed it.
 

 II.
 

 The trial court held that the phrase “extracurricular expenses” in paragraph nine of the parties’ agreement was not ambiguous for two reasons. First, the court determined that the “usual and customary” meaning of the phrase “extracurricular expenses” is “those expenses required for the minor children’s participation in activities outside of school.”
 

 The father contends that the trial court’s determination is erroneous because, he says, the dictionary definition of “extracurricular” denotes school sponsorship or supervision of an activity. Citing
 
 Webster’s New World Dictionary of the American Language, Second College Edition,
 
 the father contends that “extracurricular” means
 

 “[n]ot part of the required curriculum; outside the regular course of study but
 
 under the supervision of the school
 
 (dramatics, athletics, and other extracurricular activities).”
 

 (Emphasis added.) Citing
 
 Memamr-Web-ster’s OnLine Dictionary,
 
 the father says that “extracurricular” means
 

 “of or relating to officially or semioffi-cially approved and usually organized activities (as athletics)
 
 connected with school
 
 and usually carrying no academic credit.”
 

 (Emphasis added.)
 

 The mother points out that “extracurricular” has a broader connotation than the meaning urged by the father. Citing, among other sources, the
 
 Random House Unabridged Dictionary,
 
 the mother contends that “extracurricular” may indicate an activity “outside one’s regular work, responsibilities, or routine.” We note that
 
 Memam-Webster’s Collegiate Dictionary
 
 444 (11th ed. 2003) provides, as an additional definition for “extracurricular,” the following: “lying outside one’s regular duties or routine.”
 

 Alabama appellate opinions have generally recognized the same distinction made by the trial court, i.e., that “extracurricular activities” occur outside of school, or during after-school hours, and may be, but are not necessarily, sponsored by or conducted under the supervision of a school.
 
 See, e.g., McGowin v. McGowin,
 
 991 So.2d 735,
 
 *809
 
 740 (Ala.Civ.App.2008) (recognizing that summer camp is an extracurricular activity);
 
 Giardina v. Giardina,
 
 987 So.2d 606, 611 (Ala.Civ.App.2008)(recognizing that sports and scouting are extracurricular activities);
 
 Tompkins v. Tompkins,
 
 843 So.2d 759, 763 (Ala.Civ.App.2002) (recognizing that horseback riding, gymnastics, and dance lessons are extracurricular activities);
 
 Jones v. State,
 
 753 So.2d 1174, 1196 (Ala.Crim.App.l999)(recognizing that “ ‘church activities such as choir’ ” and “ ‘playing in the school band’ ” are extracurricular activities).
 

 The second reason given by the trial court for determining that the phrase “extracurricular expenses” was free of ambiguity was based on the parties’ own prior history. The court found that, during the time they were married, the parties had paid the expenses for the children to engage in the same type of activities for which the mother paid and sought reimbursement after the divorce. The trial court determined that
 

 “the expenses and activities set forth for reimbursement were either being incurred in a similar manner at the time of the divorce or that said expenses and activities were reasonably anticipated to be incurred and they were intended by the parties to be covered under their agreement.”
 

 We conclude that the trial court did not err in deciding that the term “extracurricular expenses” was not ambiguous; that it had a “usual and customary” meaning; and that the parties had, at the time they reached the settlement agreement incorporated into their divorce judgment, reasonably anticipated the meaning attributed to the term by the trial court.
 

 III.
 

 The father argues that the trial court applied an improper standard to find him in contempt. He insists that his failure to have abided by the terms of the divorce judgment was the result of a good-faith error in interpretation and not a matter of willfulness or bad faith. He cites
 
 In re Poivers,
 
 523 So.2d 1079, 1082 (Ala.Civ. App.1988), for the proposition that “[a]n error in judgment without clear and convincing evidence of bad faith intent is insufficient for a finding of contempt.” Specifically, the father argues that, because the terms “extracurricular activities” and “receipt of payment” in paragraph nine of the parties’ agreement were ambiguous, he had a good-faith reason for failing to pay the sums the mother demanded.
 

 We have already held that the trial court did not err by concluding that the term “extracurricular activities” is not ambiguous. With regard to the term “receipt of payment,” the trial court held:
 

 “[T]he Court finds that the phrase ‘receipt of payment’ does not limit, restrict or require the [mother], as the primary custodial parent, to provide only written receipt of payment as the only acceptable form of proof and actual notice of expenses for reimbursement covered under the parties’ agreement. The Court finds that the parties’ agreement contemplates that the [mother’s] burden is to place the [father] on reasonable actual notice that reasonable expenses, as contemplated under their agreement, have either been incurred by the primary custodial parent or that reasonable expenses are expected to be incurred. The Court finds that the [mother] complied with this actual notice requirement in the past by both verbal and written notice of payment to the [father].”
 

 We agree that the term “receipt of payment” is “ ‘reasonably susceptible to more than one meaning,’ ”
 
 Ex parte Littlepage,
 
 796 So.2d 298, 301 (Ala.2001)(quoting
 
 Vainrib v. Downey,
 
 565 So.2d 647, 648 (Ala.
 
 *810
 
 Civ.App.1990)) and that the father could not properly be held in contempt for failing to pay those expenses demanded by the mother without a written receipt. The evidence at trial, however, indicated that for many, if not most, of the expenses, the mother had provided a written receipt, yet the father still did not pay.
 

 The mother asserts that the trial court did not actually find the father in contempt, but, she says, a contempt finding would have been warranted by the evidence. We conclude that the trial court did find the father in contempt and that it used the correct standard in doing so.
 

 “Civil contempt” is defined as a “willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.” Rule 70A(a)(2)(D), Ala. R. Civ. P. The determination of whether a party is in contempt is within the sound discretion of the trial court, and that determination will not be reversed absent a showing that the court exceeded the limits of its discretion.
 
 Stack v. Stack,
 
 646 So.2d 51 (Ala.Civ.App.1994).
 

 The trial court made the following finding in the first paragraph of its judgment:
 

 “This matter having come before the Court upon the [mother’s] Rule Nisi petition and testimony and exhibits having been submitted and considered by the Court,
 
 the Court hereby finds in favor of the [mother] as to her claims that the [father] has, without cause, failed to reimburse her for those expenses the parties agreed to be equally responsible for
 
 over and beyond the Rule 32 child support guideline amount of $410.00 per child.”
 

 (Emphasis added.) The trial court found that the father’s excuse for failing to comply with paragraph nine was “disingenuous,” and it concluded that the father “ha[d], without cause,” failed to reimburse the mother for most of the expenses the parties had agreed to divide. In awarding the mother an attorney fee, the trial court found that the father “did, in fact, receive detailed notices of the expenses claimed for reimbursement and he failed to reimburse the [mother] for said expenses within 10 days, as clearly stipulated in the parties’ agreement,” and that the father had violated the trial court’s discovery order.
 

 Although none of the trial court’s findings specifically refer to the father’s noncompliance as “willful,” we conclude that, reading the judgment as a whole, a “willfulness” finding is inescapable. Accordingly, we hold that the trial court used the proper standard. “It is completely within the trial court’s discretion to determine whether a party is in contempt. In reviewing a case alleging contempt, our review of the record is limited solely to determining if there is support for the trial court’s order.”
 
 Grant v. Grant,
 
 849 So.2d 186, 188 (Ala.Civ.App.2002). The record contains support for the trial court’s order, and, accordingly, we hold that the trial court did not exceed the limits of its discretion in determining that the father was in contempt for failing to comply with the provisions of paragraph nine of the parties’ agreement incorporated into their divorce judgment.
 

 IV.
 

 The father contends that the trial court failed to follow Rule 32(B)(7)(c), Ala. R. Jud. Admin., when it did not recalculate his child-support obligation to reflect that he, rather than the mother, was providing health-insurance coverage for the children. The father did not present this argument to the trial court, and, accordingly, he has failed to preserve it for
 
 *811
 
 appellate review. This court cannot consider arguments raised for the first time on appeal. Our review is restricted to the evidence and the arguments considered by the trial court.
 
 Andrews v. Merritt Oil Co.,
 
 612 So.2d 409, 410 (Ala.1992);
 
 Abbott v. Hurst,
 
 643 So.2d 589 (Ala.1994).
 
 See also
 
 Rule 4(a)(3), Ala. R.App. P. (any error asserted in the trial court may be asserted on appeal).
 

 The judgment of the Barbour Circuit Court is affirmed.
 

 AFFIRMED.
 

 PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 THOMPSON, P.J., concurs in the result, without writing.