PITTMAN, Judge.
After a 36-year marriage, Susanne M. Davis (“the wife”) filed an action seeking a divorce from Edward E. Davis (“the husband”). The parties have no minor children, and they settled all issues pertaining to the division of marital assets and liabilities in mediation. The Elmore Circuit Court incorporated their mediation settlement agreement into the divorce judgment. That agreement provided that the husband would have exclusive ownership of the marital home, would refinance the mortgage indebtedness on the property, and would pay the wife $24,000 for her equity interest in the property.
The only issues remaining for trial were the wife’s request for periodic alimony and both parties’ requests for an attorney’s fee. The trial court’s judgment made each party responsible for his or her own attorney’s fee. In the penultimate paragraph of the judgment, the trial court ordered the husband to pay the wife
“spousal support in the amount of $500.00 per month for 52 months commencing on June 1, 2011, and continuing for the following 51 months. Alternatively, the husband may pay to the wife, on or before January 1, 2012, $24,000.00 as full and final settlement of his obligation to the wife under this paragraph.”
The wife appeals, contending that, if the foregoing provision is deemed to be an award of alimony in gross, then the trial court acted outside the limits of its discretion in failing to award (or to reserve the right to award) periodic alimony. In the alternative, she contends that, if the provision is deemed to be an award of rehabilitative alimony or periodic alimony limited to a period of 52 months, then the amount *1059 of the award is inequitable. We affirm the trial court’s judgment.
I.
“ ‘A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed. Sartin v. Sartin, 678 So.2d 1181 (Ala.Civ.App.1996). “The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.” Id, at 1188.’ ” Routzong v. Baker, 20 So.3d 802, 806 (Ala.Civ.App.2009) (quoting R.G. v. G.G., 771 So.2d 490, 494 (Ala.Civ.App.2000)). We conclude that the award in the penultimate paragraph of the judgment was “either ‘rehabilitative alimony,’ see Alfred v. Alfred, 89 So.3d 786 (Ala.Civ.App.2012), or ‘periodic alimony limited to a period of [52] months,’ see id, 89 So.2d at 791 (Moore, J., concurring in part and concurring in the result).” Frye v. Frye, [Ms. 2110024, September 14, 2012] — So.3d -, - (Ala.Civ.App.2012). That is so because periodic alimony “is an allowance for the future support of the [recipient spouse] payable from the current earnings of the [paying spouse],” Ex parte Hager, 293 Ala. 47, 55, 299 So.2d 743, 750 (1974), and the award in this ease was specifically designated as “spousal support.” See Huldtquist v. Huldtquist, 465 So.2d 1146, 1148 (Ala.Civ.App.1984) (construing a judgment ordering payments of $350 per month for 12 months, and then $300 a month for 8 years, to be periodic alimony, despite the fact that the time of payment and amount of payment were certain, because “the purpose of the payments was not to replace the wife’s inchoate rights in the husband’s estate (alimony in gross), but rather to pay a future allowance for support of the wife out of the husband’s future earnings”).
Further, alimony in gross “is a form of property division,” Ex parte Brunner, 10 So.3d 24, 27 (Ala.2008) (citing with approval Johnson v. Johnson, 840 So.2d 909, 912 (Ala.Civ.App.2002)), and the parties had previously settled all property-division issues in mediation without providing for alimony in gross.
The wife’s periodic-alimony award will not expire until October 2016, and she may seek a modification or an extension of that award at any time before its expiration. See Enzor v. Enzor, 98 So.3d 15, 21 (Ala.Civ.App.2011); Treusdell v. Treusdell, 671 So.2d 699, 704 (Ala.Civ.App.1995).
II.
The trial court ordered the husband to pay $500 per month in pendente lite spousal support. The wife contends that the trial court’s decision not to increase the amount of periodic alimony over and above what the husband had been paying in pendente lite support was inequitable.
“This court and our supreme court have enumerated the many factors trial courts must consider when weighing the propriety of an award of periodic alimony, Edwards v. Edwards, 26 So.3d 1254, 1259 (Ala.Civ.App.2009), which include: the length of the marriage, Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009); the standard of living to which the parties became accustomed during the marriage, Washington v. Washington, 24 So.3d 1126, 1135-36 (Ala.Civ.App.2009); the relative fault of the parties for the breakdown of the marriage, Lackey v. Lackey, 18 So.3d 393, 401 (Ala.Civ.App.2009); the age and health of the parties, Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000); and the future employment prospects of the parties, Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ.App.2003). In weighing those factors, a trial court essentially deter *1060 mines whether the petitioning spouse has demonstrated a need for continuing monetary support to sustain the former, marital standard of living that the responding spouse can and, under the circumstances, should meet. See Gates v. Gates, 830 So.2d 746, 749-50 (Ala.Civ.App.2002); Hewitt v. Hewitt, 637 So.2d 1382, 1384 (Ala.Civ.App.1994) (‘The failure to award alimony, although discretionary, is arbitrary and capricious when the needs of the wife are shown to merit an award and the husband has the ability to pay.’).”
Shewbart v. Shewbart, 64 So.3d 1080, 1087 (Ala.Civ.App.2010).
At the time of trial, both parties were 56 years old. The husband is a graduate of the United States Military Academy and holds a master’s degree. The wife attended Auburn University at Montgomery but did not receive a college degree. The trial court’s judgment summarized the parties’ employment history as follows:
“The wife has had various employment during the term of the marriage, including employment in a pharmacy, a grocery store, a publishing company, and at Montgomery Radiology where she worked in the billing department. She left employment with Montgomery Radiology to assume responsibility for assisting with construction of a new home that she and [the husband] were building. After the home was complete, she went to work with Health Med doing health screening on a contract basis. According to the wife’s testimony, the job with Health Med paid $15.00 per hour, but was sporadic and she worked only several days each week....
“The husband has worked with Winn Dixie, with his father in a family insurance business, and with Alabama Home Furnishings. The husband ... is employed by the Retirement Systems of Alabama as [the] department [of office services] director and has been so employed for approximately 20 years. The husband testified that he ... will be eligible for retirement and to receive retirement benefits at age 60. His earnings between 2007 and 2009 from the Retirement Systems of Alabama have been as follows: 2007, $69,760.10; 2008, $75,163.76; and in 2009, $78,523.92.”
The wife was not employed at the time of trial because, she said, she was disabled and unable to work. She suffers from scoliosis, a curvature of the spine that causes back pain when she stands for extended periods or lifts heavy objects, and from Dupuytren’s disease, a hereditary connective-tissue disorder that causes the fingers to bend towards the palm of the hand. In 2008, the wife underwent reconstructive tendon-graft surgery on her right thumb, after which she developed chronic-pain syndrome. Later, she underwent the same surgical procedure on her left thumb; at the time of trial she was wearing a cast on her left hand. The wife stated that she could use her right hand and that she was in “an observation state” concerning her future prognosis. She stated that she had applied for Social Security disability benefits; that her claim had been denied; and that she had been awaiting a hearing before a hearing officer. She expected to receive approximately $500 per month in disability benefits if her claim was approved. The husband testified that he had had open-heart surgery in 2003 but that he considered himself to be in good health currently.
The trial court determined that “both parties share responsibility for the marital discord that eventually resulted in the dissolution of this marriage.” The event that precipitated the parties’ separation in 2009 was a heated confrontation during which the husband demanded that the wife de *1061 part the marital residence and live with her mother in Montgomery. The wife left the marital residence, went to her mother’s house, and eventually filed a complaint for a divorce. The trial court’s judgment states:
“[The wife’s mother] has since died and [the wife] continues to reside in her mother’s home which is now owned by the wife and her brother .... [The wife] lives in the home rent free but pays the homeowners’ association dues of $140.00 per month and all taxes and utilities on the home. There is no mortgage on the home and the wife testified that she estimates the current value of this home to be $190,000.00. Evidence introduced at the final hearing establishes that the home is currently assessed at $230,000.00 by the Montgomery County Department of Revenue. According to the wife, this home is currently offered for sale, though not listed with an agent, and that she and her brother will eventually sell the home and divide the proceeds.
“The testimony established that since 2005, the wife has received $289,602.61 as gifts from her late mother. The evidence further established that the wife will realize, at a minimum, $95,000.00 when her late mother’s home in Montgomery sells. Using these amounts, the wife’s total gifts from her mother during the past five years total $384,602.61, or an average of $76,921.00 per year during that period. During the past three years, the husband has earned from his employment an average of $74,482.00.”
The husband testified that he had suggested that the wife save or invest part of the money she had received from her mother, but, he said, the wife had told him that it was her money and she would do with it what she pleased. The wife acknowledged that she had spent or given to the parties’ adult children all but $6,000 of the more than $384,000 in gifts that she had received from her mother. At trial, the wife presented a list of monthly expenses that, she estimated, she would incur if she were to sell her mother’s house and buy another residence for herself. Those expenses — which the wife acknowledged were speculative — totaled $2,624.
The husband’s monthly gross income is $6,690.60. His monthly net income is approximately $4,700, from which, he said, he must pay $4,769 in monthly expenses. His expenses include payments totaling $1,412 for the first and second mortgages on the marital residence; $650 for groceries; $515 for gasoline; $420 for medical bills; $285 for indebtedness on his truck; and $274 to repay his sisters for a $6,000 personal loan. With respect to the wife’s need and the husband’s ability to pay alimony, the trial court determined:
“The evidence tended to establish that neither the husband nor the wife currently has any discretionary funds and both appear to the Court to be living on what is commonly referred to as a month-to-month basis. Since the time of the pendente lite hearing, the husband has paid monthly spousal support to the wife in the amount of $500.00 per month and has had to borrow or draw from his deferred compensation account to pay some of the costs or expenses accompanied by this litigation.
[[Image here]]
“Remarkably, the wife testified during her March 2010 deposition that she was not disabled and was able to be employed. During her trial testimony, two months later, the wife claimed that she is disabled and not able to work. It is undisputed that she has not sought employment since the separation. It appears to the Court that the wife has remained content to spend freely and *1062 await an award of permanent alimony. If such is the case, the wife’s anticipation is misplaced. The Court finds from the evidence that she is indeed able to be employed should she decide to seek employment.”
The record indicates that the wife was deposed in March 2010, as the trial court’s judgment states, but that her trial testimony was given in May 2011 — 14 months, rather than 2 months, after her deposition testimony. In the interim, the wife said, her scoliosis had worsened and she had undergone surgery on her left thumb. Notwithstanding the trial court’s mistake concerning the amount of time that had elapsed between the wife’s deposition testimony and the wife’s trial testimony, it is apparent that the trial court had a basis upon which to discredit the wife’s claim that- she was unable to be employed. In light of testimony indicating that the wife’s scoliosis caused her back pain only when she stood for long periods or lifted heavy objects, that the wife had regained the use of her right hand following surgery and physical therapy, and that, following a healing period, the wife was also expected to regain the use of her left hand, there was an evidentiary basis for the trial court to disbelieve the wife’s claim of disability.
“ ‘It was within the province of the trial court to consider the credibility of the witnesses, to draw reasonable inferences from their testimony and from the documentary evidence introduced at trial, and to assign such weight to various aspects of the evidence as it reasonably may have deemed appropriate.... In order to reverse the trial court ..., we would have to make our own credibility determinations and we would have to reweigh the evidence, neither of which we are allowed to do.’ ”
Vestlake Cmtys. Prop. Owners’ Ass’n v. Moon, 86 So.3d 359, 367 (Ala.Civ.App.2011) (quoting Miller v. Associated Gulf Land Corp., 941 So.2d 982, 990 (Ala.Civ.App.2005)).
Moreover, in contrast to evidence indicating that the husband had debts relating to a first and second mortgage on the marital residence, a truck loan, personal loans from his family members, and medical expenses, the evidence indicated that the wife was virtually debt-free, having only one credit card on which there was a balance of approximately $1,000. Further, upon the entry of the divorce judgment, the wife was to receive her equity interest in the marital residence of $24,000, and upon the sale of her mother’s house, she would receive a minimum of $95,000. Notwithstanding the husband’s relatively healthy income, the trial court was authorized to conclude that the husband simply did not have the ability to pay more than $500 per month in alimony, given his debt obligations.
It appears that the trial court may have limited the wife’s alimony award to 52 months because the end of that period corresponds to the date when the husband would be eligible to retire, at which point, the trial court could have determined, the husband would have fewer financial resources available to him. As we have previously pointed out, if the wife’s physical condition deteriorates or the husband’s financial condition improves before October 2016, the wife may seek to modify or extend the alimony award. Given the circumstances that existed at the time of trial, however, we cannot find that the trial court’s judgment was unsupported by the evidence so as to be plainly and palpably wrong.
The judgment of the Elmore Circuit Court is affirmed.
The wife’s request for an attorney’s fee on appeal is denied.
AFFIRMED.
*1063 THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, ■without writing.