On Application for Rehearing

THOMPSON, Presiding Judge.
This court’s opinion of December 14, 2012, is withdrawn, and the following is substituted therefor.
Michael L. Keating (“the husband”) appeals from a judgment divorcing him from Jodi K. Keating (“the wife”). In the judgment, the trial court, among other things, divided the marital property and ordered the husband to pay the wife $1,000 each month in periodic alimony.
This court’s review of the record indicates the following. The parties married in March 1998. One child was born of the marriage. The child was 11 years old at the time of the trial. When the parties married, the wife said, she was a regional manager for a finance company. The wife testified that no money was owed on the house she lived in at the time she married the husband. The husband worked for a restaurant chain in Mobile. He did not own any real property at the time of the marriage, so the parties lived in the wife’s house. Eventually, the wife said, they sold her house and built a new house. Later, they sold that house and moved into the house in which they were living when the wife filed for a divorce in April 2010. The wife also testified that, when the parties married, she paid off the husband’s credit-card debt of between $8,000 and $9,000 and his student loans, which were a “few thousand dollars.”
The wife testified that she sought a divorce on the ground of adultery. She said that, in 2007, she discovered that the husband was having an affair with someone with whom he was attending graduate school. The wife said that the husband told her that their marriage was over, that *1262 he was in love' with the woman with whom he was having an affair, and that he and that woman planned to marry. However, the wife testified, the woman decided to return to her own husband. The husband, in turn, returned to the wife and, according to the wife, “pretty much acted perfect” for a time, but, the wife said, the affair had had a “catastrophic, heartbreaking” effect on the marriage.
In April 2010, the wife said, she learned that the husband was having another affair, this time with someone with whom he had worked. She said that the husband told her at that time that their marriage was over and that she asked him for his wedding band and his key to the marital residence. The wife testified that she asked the husband to leave the residence but that he refused, telling her his attorney had told him not to move. The wife said that she filed for a divorce the day after she learned of the husband’s 2010 affair, but she stayed in the marital residence about two more weeks. During that two-week period, the wife said, the husband would talk openly on the telephone with the woman with whom he was having the affair, and he continued to refuse the wife’s request that he leave the house. After about two weeks, the wife said, she and the parties’ child moved out of the marital residence and into a smaller house, and the wife began having to pay rent.
At the time of the trial, the parties owed $292,574 on the first mortgage on the marital residence. They also had a home-equity line of credit with a balance of approximately $54,000. Documentary evidence was introduced indicating that the husband had purchased a house in Daphne (“the Daphne house”) in February 2010, about two months before the wife filed for the divorce. The wife testified that the husband did not tell her about the Daphne house, and her name did not appear on any of the paperwork regarding the house. The wife testified that, after she learned about the Daphne house, the husband told her that he had cashed in a retirement account for the down payment. There was approximately $19,000 in the retirement account. The settlement statement prepared for the purchase of the Daphne house indicated that the husband had made a down payment of $22,391.98. The mortgage balance for the Daphne house was approximately $72,000 at the time of the trial. At the time of the trial, the husband was earning rental income from the Daphne house, and he had offered the renters an option to purchase the house for $117,900.
At the time of the trial, the wife worked at a bank earning an annual income of approximately $59,640. The husband worked for the United States Army Corps of Engineers and had an annual income of approximately $84,575. In addition to their respective jobs, the parties at one time had owned an engraving and personalization shop called Personally Yours Gifts & Accessories, LLC (“PY”). The wife owned 51% of PY; the husband owned 49%. The wife testified that PY never turned a “significant profit” and that it had “a lot of debt.” The wife said that she had filed a claim with BP, an oil company, for revenue PY had lost as a result of the 2010 Deepwater Horizon oil spill in the Gulf of Mexico. She said she had received $15,065 from BP and $72,900 from the Gulf Coast Claims Facility in connection with the oil spill. The wife testified that she had used the money she received as a result of the oil spill to pay PY’s expenses, including paying off debt, paying outstanding invoices to vendors, and making payroll. The wife said that after she and the husband separated, the husband told her he wanted nothing more to do with PY. She said that she had closed PY and had sold the furniture, fixtures, *1263 and existing inventory for $65,000. The wife testified that, after using the oil-spill money and the money from the sale of the assets of PY, the business was still approximately $20,000 in debt. The evidence was undisputed that, despite being a 49% partner in PY, the husband had not paid anything toward its debt.
In addition to his share of PY, the husband had a second business, Keating & Associates. Through Keating & Associates, the husband wrote grants for government projects, engaged in “project management,” and did “stuff’ for an architectural firm and firms he had had contact with in previous jobs. Keating & Associates had no employees other than the husband. The wife testified that Keating & Associates also earned income from assisting BP after the oil spill in the Gulf. The parties’ “proposed” tax return for 2010 indicated that Keating & Associates had income of $109,791 that year. The husband said that, because of his full-time job with the Army Corps of Engineers, he did not have the time to devote to the projects he had been working on through Keating & Associates. At the time of the trial, he said, he was not earning an income from Keating & Associates. However, the husband also testified that, a month before the trial, he had become a one-third partner in a venture called Global Infrastructures Systems and Services, which was established. to do “energy management work.” He said that he expected to earn a third of any profit derived from that business. The husband has also taught engineering courses at Faulkner University and the University of South Alabama, earning approximately $12,000 annually.
The wife had a retirement account through her employer of approximately $20,409. She testified that, at one time, she had an additional retirement account of more than $60,000, but the parties closed that account and used the proceeds toward the purchase of the marital residence. The husband had numerous retirement accounts at the time of the trial. Those accounts totaled approximately $57,386.
The wife testified that she had been using credit cards to meet her monthly expenses after she and the husband separated. Both parties were questioned extensively regarding their finances, including their debt, the necessity for certain expenditures, the necessity for certain deductions from their respective paychecks, loans, and business profits and losses. Both parties contended that the other had access to money that was unaccounted for in the documents exchanged during discovery.
After the wife filed for a divorce in April 2010, the parties entered into a “Temporary Agreement Pending Final Hearing.” Pursuant to that agreement, which the trial court adopted on June 4, 2010-, the husband was to retain possession of the marital residence. He also was to continue to make the payments on the first mortgage on that residence and to pay for all utilities for the marital residence. The husband and the wife were to be equally responsible for the payments on the home-equity line of credit.
The husband and the wife also agreed to “share joint custody of the minor child,” with the wife having primary physical custody subject to the husband’s visitation. However, the parties also agreed to evenly divide “all expenses related to the minor child,” with the caveat that
“[a]ny cost greater that $50.0Q must be mutually agreed upon. Including but not limited to:
“1. Educational tuition, fees and meals/snacks.
“2. Extracurricular activities.
“3. Summer camps and daycare.
*1264 “4. Cell phone bill.
“5. Clothing.
“6. Doctor/co-pay expenses and prescriptions.”
As to those expenses, the husband agreed to reimburse the wife for payments she made on his behalf within 14 days of notification.
After the trial, the trial court entered a judgment divorcing the parties on the ground of adultery. The parties were awarded joint legal custody of the child, and the wife was awarded primary physical custody. The husband was ordered to pay $1,123 per month in child support. In addition, the husband was ordered to pay the wife a total of $17,259.82 in past-due pendente lite child support. However, after a hearing on the husband’s motion to alter, amend, or vacate the judgment, the trial court amended the judgment and awarded the wife $8,629.91 in pendente lite child support. That figure represents half of the original award, to reflect the parties’ agreement.
The trial court ordered that the marital home be sold and that any equity remaining after the payment of the mortgage, the home-equity line of credit, and fees related to the sale of the home was to be paid to the wife. The husband was allowed to remain in the marital residence until it sold, and he was ordered to be responsible for making the payments on both the first mortgage and the home-equity line of credit. The husband also was awarded the house he had purchased in Daphne.
The wife was awarded all the business interest in PY. The husband was awarded all the business interest in Keating & Associates. The parties were each awarded their respective vehicles. In addition, the trial court ordered that the wife was to be responsible for paying the debt on one of the parties’ credit cards, which had a balance of approximately $72 five months before the judgment was entered. The trial court ordered that three of the parties’ savings or “ETrade” accounts be liquidated to pay the debt incurred on two other credit cards, which had a combined outstanding balance of approximately $31,210.84 five months before the judgment was entered. The husband was ordered to pay any remaining marital debt, excluding debt “attached” to the marital residence. Finally, the husband was ordered to pay the wife $1,000 a month in periodic alimony.
The husband timely appealed. The wife, who has proceeded pro se at times during this litigation, did not submit a brief on appeal.
Our standard of review of a judgment determining an award of alimony and dividing marital property is well settled.
“When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 *1265 So.2d 729, 734 (Ala.Civ.App.2001). ‘[W]e note that there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.’ Yohey v. Yohey, 890 So.2d 160, 164 (Ala.Civ.App.2004).”
Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
The husband contends that the amount of past-due pendente lite child support the trial court awarded to the wife in the final judgment was mathematically incorrect or, alternatively, that the trial court exceeded its discretion in making that award because, the husband says, the award violated the temporary agreement the parties had reached during the pen-dency of the litigation.
The trial court awarded the wife $20,731 for expenses she had incurred on behalf of the child. The trial court then offset that amount by $3,471.18 for expenses the husband had incurred on behalf of the child, and it determined that the husband owed the wife $17,259.82 in pendente lite support. The trial court then divided that amount in half, to reflect the parties’ agreement, so that the wife was awarded $8,629.91. However, this court is unable to discern from the record how the trial court arrived at the initial figure of $20,731 in expenses, on which the other calculations were based.
The wife testified that she had kept up with the expenses she had incurred on behalf of the child during the 19 months between the time the trial court entered an order adopting the temporary agreement and the entry of the final judgment. The total amount of those expenses was $18,542.66. The wife agreed that the husband’s share of those expenses would have been $9,271.33. In addition, the wife acknowledged that she did not make all of her share of the payments toward the home-equity line of credit as called for in the temporary agreement. When the husband was given a credit for those missed payments, the wife said, he would owe her a total of $5,196.33. The wife also acknowledged that she did not discuss with the husband each expenditure of more than $50 spent on behalf of the child; however, she said, the husband had refused to discuss anything with her and, throughout the pendency of the litigation, had refused to reimburse her for those expenditures.
In his original brief to this court, the husband asserted that he owes the wife only $371.25 in pendente lite support for the 19 months the temporary agreement was in effect. On rehearing, the husband contends that, “upon further analysis,” he does not owe any pendente lite support. Given that the parties had agreed to divide the expenses incurred on behalf of the child, including expenses for items such as tuition, fees, meals and snacks, clothes, medical expenses, and the child’s extracurricular activities, the husband’s claim that he should pay less than $400 toward support of the child for a 19-month period is implausible.
From the evidence contained in the record, the trial court could have determined that the husband was uncooperative in sharing expenses incurred on behalf of the child and that the wife ■ wás entitled to reimbursement for the expenses for which she had documentation. Nonetheless, because we cannot determine how the trial court arrived at the award of $8,629.91 in pendente lite child support to the wife, we must reverse the judgment as to this issue and remand the cause for' the trial court to recalculate the amount of pendente lite support owed to the wife or to demonstrate how it reached the $20,731 amount of expenses on which its award is based.
*1266 The husband also argues that the final judgment requiring him to make the monthly payments on both the first mortgage on the marital residence and the home-equity line of credit was inequitable because, he says, approximately half of the balance on the home-equity line of credit was attributable to the purchase of the wife’s vehicle. He states that, “[f]or that reason alone, arguably, she should be obligated to pay one-half of the [home-equity line of credit] installments.... ” The husband’s argument as to this issue is one paragraph in length, and he fails to cite any authority in’ support of his position.
“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 928 (Ala.2002); Arrington v. Mathis, 929 So.2d 468, 470 n. 2 (Ala.Civ.App.2005); Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). ‘This is so, because “ ‘it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or. argument.’ ” ’ Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007) (quoting. Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008).
Moreover, we note that, in the final judgment, the trial court permitted the husband to remain in the marital residence until it is sold. Also, the parties had used the money from the wife’s retirement account to make the down payment on the marital residence. The record indicates that when the wife discovered the husband was involved in a second extramarital affair, the husband acknowledged the affair and told the wife that their marriage was “over.” When the wife asked the husband to leave the marital residence, the husband refused, so the wife and the child moved to a separate residence for which the wife has had to pay rent. The wife said the house she and the child were renting had approximately half the square footage of the marital residence. She also said that the marital residence had a pool; the rental house did not. Throughout the pendency of the litigation, the husband remained in the marital residence. At the same time, he failed to reimburse the wife for his share of the expenses incurred on behalf of the child. The husband has had the benefit of remaining in the marital residence, and, as he told the trial court, his lifestyle has not changed since the wife and the child left the marital residence. Based on the record before us, we cannot say that the trial court abused its discretion in requiring the husband to make both the monthly mortgage payments on the marital residence and the monthly payments on the balance owed on the home-equity line of credit.
The husband also argues that the award of $1,000 each month in periodic alimony to the wife is not justified and is inequitable. The wife worked as a branch manager of a bank and said her take-home pay was $3,156.52 each month. In his brief on appeal, the husband attempts to demonstrate that the wife’s “true” monthly income was actually $3,667.65, and not $3,156.52 as the wife had claimed. The husband attempts to discount the amount the wife contributed to her retirement account and to the payment of her health-insurance premium. He also challenges a number of the expenses on her budget as being too high or unnecessary. The husband ultimately determines that, by his *1267 calculation, when child support is considered, the wife would have a surplus of $518.81 each month without receiving alimony.
■ On the other hand, the husband claimed that he had a monthly “disposable income” of $5,112.14. It appears that that income was only what he earned from his job with the Army Corps of Engineers. It did not include his teaching jobs, from which he earned approximately $12,000 annually, income he earned from the rental property he had purchased in Daphne, or his income from Keating & Associates, which was more than $100,000 before the divorce, or from his consulting work with Global Infrastructures Systems and Services. The husband claimed that, based on his monthly take-home pay of $5,112.14, he would have a shortfall of $201.04 each month if he were required to pay $1,000 a month in alimony. Based on the evidence, the trial court could have believed the wife’s calculations as to her income and expenses over the husband’s calculations. Additionally, the trial court could have determined that the husband’s total income was sufficient to pay the wife $1,000 a month in alimony without “crippling” him, as the husband argues. Also, we note that the payments toward the mortgage and the balance of the home-equity line of credit constitute $3,190.18 of the husband’s monthly expenditures. When the marital residence sells, the husband will be relieved of that burden and will be able to lower his monthly mortgage or rental payments if he chooses.
Furthermore, in determining whether to award alimony and divide marital property, the trial court may consider the relative fault of the parties for the breakdown of the marriage. Lackey v. Lackey, 18 So.3d 393, 401 (Ala.Civ.App.2009); and Davis v. Davis, 108 So.3d 1057, 1059 (Ala.Civ.App.2012). “ “Where one spouse is guilty of misconduct toward the other spouse, the trial court’s award may be as liberal as the estate of the offending spouse will permit under the circumstances.’ ” McDowell v. McDowell, 644 So.2d 27, 28 (Ala.Civ.App.1994) (quoting Shirley v. Shirley, 600 So.2d 284, 287 (Ala.Civ.App.1992)).
In his brief, the husband appears to argue that the trial court should not have considered evidence of his adultery in awarding the wife alimony because, he says, the parties reconciled after his affair in 2007 came to light and he and the wife were intimate after the wife learned of the 2010 affair. The husband did not provide any authority for his contention that, because the parties were intimate after they separated, the trial court could not consider the husband’s adultery when determining whether to award alimony.
The wife acknowledged that the two had been intimate after she discovered the husband’s second affair. She testified that after she had moved to the rental house, the husband had occasionally come over and “acted like he missed” her. She said that they would watch television and have a glass, of wine and that, oh “probably three” occasions, they had “wound up having relations.” , The wife said their intimacy had occurred because she was lonely and missed the husband and because he had told her that he missed her and “not to give up.” The wife also testified that, after they had been intimate, the husband told her that he was still seeing the woman with whom he had been having an affair but that the wife could no longer pursue a divorce on the ground of adultery because they had had sex since they had separated. However, the wife said, she never moved back in with the husband and they never reconciled after the second affair. The husband, on the other hand, testified that the wife had been the instigator of their intimacy after they separated. He did not *1268 contend that they had ever reconciled after the second affair. The husband also cites no authority to support his contention that the parties’ intimacy after separating necessarily requires a determination that the wife condoned the affair. In fact, our review of the record indicates that the wife never forgave or condoned the husband’s conduct.
Based on the evidence of the husband’s adultery, his various sources of income, the amount of his income and the wife’s income, the changes in the wife and child’s lifestyle, and the husband’s comment that his lifestyle had not changed at all since he and the wife had separated, we conclude that the trial court did not abuse its discretion in ordering the husband to pay the wife $1,000 a month in periodic alimony.
The husband asserts that the trial court exceeded its discretion in divesting him of his interest in the parties’ engraving business, PY. The wife testified that the business had not been profitable and that she had sold the business. She said that she had used the proceeds from the sale, as well as money received as a result of the oil spill, to pay PYs debts, but that PY still had debt of about $20,000. The husband acknowledged that he had not paid any money toward PY’s debt, even though he was a 49% shareholder in the business. Furthermore, in arguing that divesting him of his share of PY was inequitable, the husband never mentions that the trial court awarded him Keating & Associates and divested the wife of any interest she may have had in that business. The husband conceded that, although he did not have the time he once had to put into Keating & Associates, it was still an ongoing concern. Evidence also indicated that the husband had just become a partner in another consulting business from which he expected to earn income. The husband’s contention that the trial court abused its discretion in divesting him of his interest in PY is not well taken.
The husband also argues that the trial court abused its discretion in requiring him to liquidate financial accounts to pay certain marital debt. The liquidation of the accounts, which were accumulated during the course of the marriage, to pay marital debt necessarily meant that neither the husband nor the wife received proceeds from those accounts. As mentioned, the trial court heard the evidence regarding the parties’ respective incomes and debt, their employment opportunities, and the causes of the breakdown of the marriage. Based on the record before us, we cannot say that the trial court abused its discretion in ordering that the proceeds of certain financial accounts be used to pay the parties’ debt.
The husband also contends that the trial court abused its discretion in mandating more expensive health-insurance coverage through the wife’s employer rather than the insurance available through his employer in calculating child support. The husband cites no authority for this contention. Accordingly, this argument is waived. White Sands Group, 998 So.2d at 1058.
The husband argues that the trial court abused its discretion in awarding the wife $12,000 to be paid toward her attorney fee. In support of his contention, the husband states that the wife failed to demonstrate that she had a financial need for an award of an attorney fee and that there was no evidentiary basis for an award of $12,000.
“ ‘Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. *1269 Thompson, 650 So.2d 928 (Ala.Civ. App.1994). “Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.” Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1998).’
“Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).”
E.A.B. v. D.G.W., [Ms. 2100718, Sept. 7, 2012] — So.3d -, - (Ala.Civ.App. 2012).
In this case, as mentioned, the trial court could have determined that the husband’s financial circumstances were more favorable than the wife’s. The evidence also supported the trial court’s finding that the husband’s conduct was the primary cause of the breakdown of the marriage. The trial court’s judgment indicated that it rejected many of the husband’s arguments during the litigation. Moreover, contrary to the husband’s assertion that there was no evidentiary basis for the value of the services of the wife’s attorneys, the wife testified that she had paid $5,000 to the attorney who first represented her in this case and who filed the complaint on her behalf. In addition, by the time of the trial, the wife said, she had paid her current attorney $10,000 and was aware that she still owed her attorney for outstanding expenses. We note that the record in this case is 1,010 pages long, excluding the 8 boxes of exhibits, which hold about 500 pages of documents each. The wife’s testimony regarding the amount she had paid to her attorneys provided the trial court with an evidentiary basis for its award of an attorney fee; therefore, we conclude that the trial court did not abuse its discretion in ordering the husband to pay the wife an attorney fee of $12,000. See T.K.T. v. F.P.T., 716 So.2d 1235, 1240 (Ala.Civ.App.1998) (trial court did not abuse its discretion in awarding wife an attorney fee of $15,000 when wife’s attorney’s fees totaled $20,250 and she had already paid attorney $7,100 and costs of $3,418.15).
Finally, the husband contends that the trial court abused its discretion in denying his motion to enforce a purported “settlement agreement” the parties had reached before the trial of this matter. The husband cites a motion to withdraw that the wife’s-first attorney filed with the court. As grounds for his request to withdraw from the case, the wife’s first attorney stated:
“1. The [wife] and [the husband] have apparently reached a settlement agreement in said case.
“2. The [wife] has informed the undersigned counsel that she wishes to allow [the husband’s] attorney, Mr. Thomas P. Ollinger, to draft said settlement agreement and represent herself pro se from this point forward.”
The trial court granted the motion on February 4, 2011. Less than two weeks later, the wife retained a second attorney, who filed a notice of appearance on February 16, 2011. It appears that the husband’s attorney drafted a settlement agreement, and the husband signed it on February 9, 2011. The wife, however, never signed the document, and the husband filed a motion seeking enforcement of the purported settlement agreement. A hearing was held on the motion on April 8, 2011. On May 11, 2011, the trial court entered an order stating that, after hearing testimony and arguments on the husband’s motion, it was denying what it called an “interim order.”
A transcript of the April 8, 2011, proceedings does not appear in the record. Because we do not have a transcript of the April 8, 2011, hearing, we must assume that the evidence presented at that hear *1270 ing supports the trial court’s decision not to enforce the purported settlement agreement. See Leeth v. Jim Walter Homes, Inc., 789 So.2d 243, 247 (Ala.Civ.App.2000) (“ ‘[W]hen a trial court’s order is based on evidence that is not before the appellate court, we conclusively presume that the court’s judgment is supported by the evidence.’ ” (quoting Newman v. State, 623 So.2d 1171, 1172 (Ala.Civ.App.1993))).
For the reasons set forth above, we reverse that portion of the judgment awarding the wife pendente lite child support in the amount of $8,629.91, and we remand the cause for the trial court to reconsider the award or to provide this court with guidance as to how the amount of the award was determined and to enter a judgment accordingly. The remainder of the judgment is affirmed.
APPLICATION FOR REHEARING OVERRULED; OPINION OF DECEMBER 14, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.