STATE OF LOUISIANA

VERSUS

DERRICK A. FORD, JR.

NO. 18-KA-362

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 16-760, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING


June 19, 2019


**STEPHEN J. WINDHORST**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and John J. Molaison, Jr.


**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND**
**ENHANCED SENTENCE ON COUNT TWO AFFIRMED;**
**CONVICTION, SENTENCE, HABITUAL OFFENDER ADJUDICATION,**
**AND ENHANCED SENTENCE ON COUNT ONE VACATED;**
**REMANDED FOR FURTHER PROCEEDINGS**
>    **SJW**
>    **FHW**
>    **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Paul D. Connick, Jr.
    Thomas J. Butler
    Terry M. Boudreaux
    Zachary P. Popovich
    Douglas E. Rushton

COUNSEL FOR DEFENDANT/APPELLANT,
DERRICK A. FORD, JR.
    Derrick A. Ford, Jr.
    Cynthia K. Meyer

**WINDHORST, J.**

Defendant, Derrick A. Ford, Jr., appeals his convictions, habitual offender adjudication, and enhanced sentences. For the reasons that follow, we affirm defendant's conviction, habitual offender adjudication as a fourth-felony offender, and enhanced sentence on count two, attempted simple robbery. Based on our error patent review, we vacate defendant's conviction, habitual offender adjudication as a fourth-felony offender, and enhanced sentence on count one, simple kidnapping. We further remand this case for the trial court to enter a post-verdict judgment of acquittal on count one.

## PROCEDURAL HISTORY

On March 4, 2016, the Jefferson Parish District Attorney filed a bill of information charging defendant, Derrick A. Ford, Jr., with second degree kidnapping in violation of La. R.S. 14:44.1 (count one), and attempted armed robbery in violation of La. R.S. 14:27 and La. R.S. 14:64 (count two).[1] On March 7, 2016, defendant pled not guilty. On May 9, 2017, the State amended the bill of information to also charge defendant with possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (count four). Defendant pled not guilty.

On July 27, 2017, a twelve-person jury found defendant guilty of the responsive verdicts of simple kidnapping in violation of La. R.S. 14:45 (count one), and attempted simple robbery in violation of La. R.S. 14:27 and La. R.S. 14:65 (count two). Defendant was found not guilty on count four, possession of a firearm by a convicted felon.

On September 13, 2017, the trial court sentenced defendant to five years in the Department of Corrections[2] on count one and three and one-half years in the

---

[1] In the bill of information, Tanisha Johnson and Steven Shallerhorn were charged as co-defendants in counts one and two, and Shallerhorn alone was charged in count three. Johnson and Shallerhorn's cases were severed from defendant's case.

[2] When a trial court states that the defendant is sentenced to the "Department of Corrections," the sentence is necessarily at hard labor. State v. Jamison, 17-49 (La. App. 5 Cir. 05/17/17), 222 So.3d 908, 909 n.2.

Department of Corrections on count two to run concurrently with each other and with any other sentence defendant was serving.

After sentencing, the State filed a habitual offender bill of information, alleging defendant was a fourth-felony offender under La. R.S. 15:529.1 on counts one and two, to which defendant filed objections. On October 12, 2017, after denying defendant's objections, the trial court found that defendant was a fourth-felony offender on counts one and two. The trial court vacated defendant's sentences on counts one and two, and resentenced defendant to twenty years imprisonment at hard labor without the benefit of probation or suspension of sentence on each count to run concurrently with each other and with any other sentence he was serving.

On October 30, 2017, defendant filed a motion to reconsider his enhanced sentences, which the trial court denied. This appeal followed.

**FACTS**

Approximately 7:00 P.M. on the evening of January 3, 2016, Heather Bourgeois testified that her friend, Charles Willis, drove her to Nahkee DeJean's house located at 5144 Mt. Matterhorn Avenue in Marrero, Louisiana, to buy heroin from DeJean.[3]

Willis and Bourgeois called DeJean immediately prior to their arrival. After they pulled into DeJean's driveway, DeJean walked to Willis's truck and gave Bourgeois the heroin. Before they could leave, "Bootsy,"[4] later identified as defendant, came out of DeJean's house, saw Bourgeois in the truck with Willis, and became upset. Bourgeois testified that she "begged" Willis to leave, but that he shut off the truck. Defendant, with a gun in his hand, went to the passenger side of the truck where she was sitting and started punching her through the partially opened window. Bourgeois testified that she put her hand over the truck door's lock in an

---

[3] Throughout the trial transcript, DeJean was also referred to by her nickname "Tattoo."

[4] The trial transcripts indicate defendant's nickname was "Bootsy," but the police reports in evidence indicate his nickname was "Boosie." The spelling in the trial transcript is used in this opinion.

attempt to keep defendant from opening the door, however, she eventually gave up and defendant was able to get her out of the truck.[5]  Defendant dragged her into DeJean's house by her hair.  Bourgeois testified that she did not want to go into the house with defendant.

Once inside, defendant hit Bourgeois and screamed at her that he wanted his money.  Defendant pointed his gun at her, hit her with the gun, and ordered her to take off her clothes.  DeJean, Tanisha Johnson, "Chopper," (later identified as Steven Shallerhorn, Jr.) and Willis were in the house during the incident.  When she refused to take off her clothes, Johnson stripped her of her clothes, while "Chopper" stood over her with a gun.  Bourgeois testified that at the time, defendant was telling everyone in the house what to do because he was in charge.[6]

Vivian Varney lived next door to DeJean and heard the disturbance outside involving Bourgeois, and called her sister, which led to the police being called. Deputy Andre Nelson, Jr., Deputy Blaine Howard, and Deputy Gavin Wallace with the Jefferson Parish Sheriff's Office responded to a 9-1-1 call at 5144 Mt. Matterhorn Avenue.  Dispatch informed the officers that a black male was striking a white female in the driveway of the residence with a handgun present.  Upon arrival, the officers encountered a black male, later identified as Steven Shallerhorn, coming out of the residence, and he was ordered to the ground for officer safety.[7]

---

[5] Willis testified that he drove Bourgeois to DeJean's house so Bourgeois could buy heroin from DeJean. He corroborated Bourgeois' factual testimony that she was in the truck and defendant pulled her out of the truck, dragged her into the house by her hair, and she was stripped of her clothing inside of DeJean's house.

[6] Bourgeois testified that approximately two weeks prior to this incident on January 3, 2016, she and her best friend, Zoie Varney, went to DeJean's house after buying heroin from someone other than defendant. When defendant found out, he pushed Bourgeois to the ground and punched and kicked her in the stomach and face.  Zoie testified that she met DeJean when she moved next door to DeJean and that she introduced Bourgeois to DeJean.  Zoie and Bourgeois would go to DeJean's house to use heroin, and a lot of people came in and out of DeJean's house to use drugs.  Defendant, Johnson, and Shallerhorn would also go to DeJean's house.  Zoie also testified that she was present for the incident two weeks prior to January 3, 2016, wherein defendant barged into DeJean's house screaming that she and Bourgeois owed him money because they had bought drugs from someone else and they "deserved to get beat."  Zoie stated that defendant pushed Bourgeois to the ground and started hitting her in the face and when she tried to stop defendant, he pulled his gun out and put it in her face and threatened to shoot her.  After this incident, she and Bourgeois did not buy drugs from defendant again.

[7] Once Shallerhorn was in custody, the officers conducted a pat down for officer safety and found a handgun in Shallerhorn's front waistband, which corroborated statements made by Bourgeois and other witnesses that Shallerhorn had a gun.

As the officers took Shallerhorn into custody, Johnson opened the door of the residence, saw the officers, then closed and locked the door. Believing that someone inside could be in danger, the officers went to the rear of the residence to prevent anyone from escaping. Once in the backyard, officers observed DeJean sitting next to the back door crying and Johnson was exiting the residence. Both DeJean and Johnson were separated, placed under arrest, and subsequently gave statements. Officers went inside the house and found Bourgeois crying hysterically. Bourgeois was placed in custody while the officers cleared the remainder of the residence.[8] The officers subsequently learned that two other individuals, defendant and Willis, were in the residence prior to the officers going into the backyard and that they had fled out the back door, jumping over several fences to escape.[9]

As a result of the officers' investigation and statements made by Bourgeois and the other individuals arrested, the officers determined that defendant, "Bootsy," exited DeJean's house after Bourgeois pulled into DeJean's driveway, attacked Bourgeois while she was still in the truck, physically forced Bourgeois into DeJean's residence at 5144 Mt. Matterhorn Avenue by dragging her by the hair at gun point, ordered Bourgeois to strip inside the residence, and when she did not comply, ordered Johnson to strip Bourgeois of her clothing while looking for money.[10] Based on the investigation, an arrest warrant was issued for defendant.

On January 15, 2016, defendant was arrested on unrelated charges and brought to the detective bureau where he was interviewed by Detective Francis.[11] In his interview, defendant claimed that he was at DeJean's house earlier on January 3,

---

[8] Bourgeois was taken to the detective bureau where she provided the police with a statement. Bourgeois only knew defendant as "Bootsy." She was able to pull up Bootsy's Instagram account to identify him to the police. Bourgeois subsequently identified defendant from a photographic lineup.

[9] Willis testified that he and defendant fled through the back door of the residence when the police arrived.

[10] Defendant was identified as the perpetrator by Bourgeois, Johnson, and DeJean.

[11] Detective Francis was also present on the scene on January 3, 2016. By the time he arrived, most of the events had already taken place and the individuals had been taken into custody. Detective Francis reviewed the statements made by Bourgeois, Johnson, DeJean, and Shallerhorn.

2016, but he left around 5:30 P.M. He stated that a friend picked him up from DeJean's house.[12] He stated that his "Uncle Mark" then picked him up and he went to his uncle's house.[13] Defendant stated that he was not at DeJean's at the time of the incident or when police arrived.[14]

## ASSIGNMENTS OF ERROR and DISCUSSION

In his first assignment of error, defendant argues that the trial court's publication to the jury of the videotaped statements of DeJean and Johnson taken after their arrest violated his constitutional right to confrontation. He argues that because DeJean and Johnson were unable to recall any events from that day, defense counsel was denied the opportunity to conduct meaningful and effective cross-examination of the witnesses. He argues that the violation of his right to confrontation was not harmless error.

When the trial judge swore DeJean in at trial, DeJean stated, "I just don't want to be here, though." DeJean denied knowing "Bootsy" (defendant). She testified that she did not want to have anything to do with this proceeding and she did not recall speaking to the police after she was arrested in January of 2016. The State asked DeJean if her recollection could be refreshed if she saw herself in a videotaped statement, to which she replied that it "probably would. I don't know." DeJean blamed her lack of recollection on mental illness and substance abuse issues, stating that she was not sure if she was able to remember a conversation at that time. The State asked DeJean to "try," to which DeJean replied that the prosecutor was going to do whatever he wanted to do anyway and then she asked whether she had a choice.

---

[12] Defendant did not provide police with the name of his friend or any information about his friend that allegedly picked him up at 5:30 P.M. from DeJean's house.

[13] Detective Francis asked defendant about his uncle, but defendant said he was unable to remember his apartment number at the Gretna Park Apartments or his uncle's telephone number. Defendant did not provide his uncle's last name. Detective Francis contacted defendant's mother and grandmother and attempted to obtain his uncle's information but his mother and grandmother would not provide any information on defendant's uncle. Detective Francis stated that he did not go to the apartment complex or knock on all the doors to inquire if a "Mark" lived there.

[14] At trial, the parties stipulated that on January 6, 2014, defendant pled guilty in district court case number 12-0652 in the Parish of Jefferson to possession of cocaine

18-KA-362                                           5

The State played some of the videotaped statement, and DeJean stated that she did not recognize the individual as herself, even after the State described what she was wearing. The State then played a portion of the video wherein DeJean spelled her name for officers, to which DeJean affirmatively stated she had spelled her name in the video. However, when the State again suggested that she now recognized herself in the videotaped statement, DeJean stated she did not recognize herself but heard her name spelled. When asked again if she recognized herself, DeJean replied, "That's what I'm told."

Defense counsel objected throughout the State's questions, arguing, *inter alia*, that DeJean's recollection could not be refreshed since she did not recognize herself. The State continued to ask DeJean questions about the substance of her testimony in the videotaped statement implicating Bootsy as the perpetrator of the crimes involved in this incident, to which she repeatedly answered that she could not remember. DeJean stated that the videotaped statement would not help her remember.

The State moved to introduce the videotaped statement as a recorded recollection under La. C.E. art. 803(5). Defense counsel objected, arguing that the State did not meet its burden of showing that the videotaped statement was made when the matter was fresh in DeJean's memory or that it was based on DeJean's knowledge at the time because DeJean testified that she could not remember anything. The State responded that testimony from officers showed that DeJean's statement was taken immediately after her arrest following this incident on January 3, 2016, *i.e.*, the statement was made the same night and within a couple hours of this incident. Defense counsel argued that in the videotaped statement, DeJean was "in a similar state as she is now, and I don't know that it's - - it was made when anything was fresh in her memory and whether it reflects any of her knowledge correctly. She's in custody being forced to answer questions, she's not the defendant

in this case and it's just improper and prejudicial if the full statement comes in." The trial court overruled the objection and the videotaped statement was admitted into evidence and published to the jury.

After DeJean's statement was published to the jury, defense counsel cross-examined DeJean regarding whether she used heroin, to which DeJean replied "A lot." DeJean, however, denied using heroin prior to her testimony at trial, stating that the police picked her up too early. When questioned as to whether she used heroin the day of this incident, DeJean stated "plenty." Defense counsel continued to ask DeJean questions about her drug use, prior convictions, and prior police raids at her house related to drugs, to which DeJean answered all of defense counsel's questions without hesitation.

When Johnson testified, she also stated that she did not want to testify.[15] Johnson admitted that she was at DeJean's house on January 3, 2016 prior to Bourgeois arriving, and that she remembered speaking with police officers prior to being charged in this incident. When the State asked who else was at DeJean's, Johnson replied, "I'm done." While Johnson admitted that she knew defendant, when she was asked if defendant was at DeJean's house on January 3, 2016, Johnson responded, "I'm not answering no questions. I'm ready to go back up state. I'm not testifying." Johnson then testified that she did not remember if defendant was at DeJean's house on January 3, 2016. When asked if she would recognize herself in a videotaped statement made to police on the night in question, she replied that she did not know because she was high. She denied giving a statement to police indicating that she saw what transpired between defendant and Bourgeois. Johnson stated that viewing her statement would not help refresh her memory.

---

[15] Johnson testified that she pled guilty to charges of second degree kidnapping and attempted armed robbery resulting from this incident and is serving a ten-year sentence. She testified that she was not promised anything in return for speaking to police officers on January 3, 2016, or for her trial testimony.

The State moved to publish Johnson's videotaped statement as a prior recorded recollection under La. C.E. art. 803(5). Defense counsel then lodged "the same objections that I had to Ms. DeJean's," arguing that the witness was not in any state of mind to accurately provide any information because of drug use. The trial court noted defense counsel's objections for the record, admitted Johnson's videotaped statement, and the statement was published to the jury.

On cross-examination, defense counsel questioned Johnson about the sentence she received for pleading guilty in this case, to which Johnson replied that she received a ten-year sentence and was currently serving part of her sentence at a rehabilitation facility. When asked whether she remembered the events of January 3, 2016, Johnson responded that she did not remember. Defense counsel asked Johnson if she spoke with DeJean after they were taken into custody, to which Johnson replied "No." Defense counsel also showed Johnson a part of the videotaped statement and asked Johnson questions about police tactics. On redirect, Johnson was asked about serving her time in a "rehab center," to which Johnson admitted she was serving her sentence in a prison.

We find the trial court did not err in admitting the videotaped statements of DeJean and Johnson. The appearance of DeJean and Johnson at trial and their subjection to cross-examination were the only elements necessary to satisfy defendant's right to confrontation. Because DeJean and Johnson claimed they could not remember the events of the incident and that their memories were not refreshed by the videotape under La. C.E. art. 612B, the State offered and the trial court properly admitted their videotaped statements as a recorded recollection under La. C.E. art. 803(5), an exception to the hearsay rule. Furthermore, although defendant claims he was denied his right to cross-examine the witnesses, "the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense

may wish." United States v. Owens, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988). Accordingly, this argument is without merit as defendant had an opportunity to, and did in fact, cross-examine both witnesses, both of whom did not hesitate to answer all of defense counsel's questions.

We also note that the jury was able to view the videotaped statement, the witnesses' demeanors and states of mind therein, and give the recorded statements the weight the jury felt each deserved.

In his second assignment of error, defendant argues that the trial court's ruling preventing defense counsel from questioning defense witness David Olasky about "Uncle Mark's" unavailability to testify, violated his right to present witnesses and a defense. Defendant alleged that Mr. Olasky's testimony would have proven that defendant was not at DeJean's house at the time of the incident.

At trial, defense counsel called Mr. Olasky, a private investigator with the Jefferson Parish Public Defender's Office, who testified that during his investigation he was asked to locate a "Mr. Mark Franklin." Mr. Olasky testified that he spoke with Mr. Franklin's mother in person and spoke with Mr. Franklin over the phone. Mr. Olasky stated that he was given Mark's last name, his approximate age and his father's first name, and was able to use that information to find an address in Algiers. He testified that he went to Gretna Park Apartments two times, knocked on two doors, and was told that Mark moved out.

During questioning, defense counsel attempted to elicit from Mr. Olasky what Mr. Franklin told him in a ten-minute telephone conversation regarding defendant's whereabouts on the night of the incident. Mr. Olasky denied ever meeting Mr. Franklin in person. The State objected to Mr. Olasky's testimony on the grounds that it was in violation of discovery and was hearsay. Defense counsel argued that Mr. Olasky's testimony was admissible since Mr. Franklin was unavailable to testify

because he was infirm.[16]  Defense counsel also contended the testimony was admissible as a statement against interest because Mr. Franklin represented that he knew where defendant was that evening, therefore, Mr. Franklin is "at risk for criminal liability."[17]  The State responded that there was no showing (1) that Mr. Franklin was unavailable, (2) that Mr. Olasky's testimony fell within another hearsay exception, or (3) that Mr. Franklin had ever been arrested or charged in any crime.  The trial judge sustained the State's objection, finding that Mr. Olasky's testimony constituted hearsay and the defense had not shown how Mr. Franklin was unavailable.

Both the Sixth Amendment to the United States Constitution and Article I, §16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense.  State v. Lirette, 11-1167 (La. App. 5 Cir. 06/28/12), 102 So.3d 801, 813, writ denied, 12-1694 (La. 02/22/13), 108 So.3d 763.  This right does not require a trial court to permit the introduction of evidence that is inadmissible, irrelevant, or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice.  Id.  A trial judge's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion.  State v. Sandoval, 02-230 (La. App. 5 Cir. 02/25/03), 841 So.2d 977, 985, writ denied, 03-853 (La. 10/03/03), 855 So.2d 308.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801 C.  La. C.E. art. 804 A(4) provides that a declarant is "unavailable as a witness" when he is "unable to be present or to testify at the

---

[16] Defense counsel argued that defendant in his statement told the police that Mr. Franklin was in a wheelchair because he had been shot many times in the back, thus confirming that Mr. Franklin is infirm and unavailable to testify.

[17] Defense counsel argued that it was admissible "under (b)(3), which is a statement against interest, given that, you know, Mr. Franklin representing that he knew where Mr. Ford was that evening, I [*sic*] could potentially put him at risk for criminal liability. I would offer it under that exception."

hearing because of death or then existing physical or mental illness, infirmity, or other sufficient cause." Determining unavailability is a preliminary question under La. C.E. art. 104 A.

Generally, under compelling circumstances a defendant's right to present a defense may require admission of statements which do not fall under any statutorily recognized exception to the hearsay rule. State v. Van Winkle, 94-0947 (La. 06/30/95), 658 So.2d 198, 202; State v. Nixon, 17-1582 (La. App. 1 Cir. 4/13/18), 250 So.3d 273, 280, writ denied, 18-0770 (La. 11/14/18), 256 So.3d 290. Normally inadmissible hearsay may be admitted if it is reliable, trustworthy, and relevant, and if to exclude it would compromise the defendant's right to present a defense. Van Winkle, supra; Nixon, supra.

"When the trial court excludes evidence, such as witness testimony, error may not be predicated upon a ruling unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by counsel." State v. Massey, 11-358 (La. App. 5 Cir. 03/27/12), 97 So.3d 13, 28, writ denied, 12-0993 (La. 09/21/12), 98 So.3d 332; La. C.E. art. 103. This Court has consistently held that when a defendant does not make known the substance of the excluded evidence for the purpose of consideration by the trial and appellate court, the alleged error is not preserved for review on appeal. Massey, 97 So.3d at 28.

Defendant failed to proffer the substance of Mr. Franklin's excluded testimony. Therefore, the alleged error was not preserved for review on appeal. Mr. Olasky's testimony as to what Mr. Franklin told him regarding defendant's whereabouts on the night of the incident constituted inadmissible hearsay, and the trial court correctly found that Mr. Olasky's testimony was inadmissible after defense counsel failed to show that Mr. Franklin was unavailable as a witness. Further, even if Mr. Franklin was truly unavailable for trial, the defense failed to prove his trustworthiness and reliability, or that he was even who he claimed to be.

Furthermore, despite any alibi that defendant wished to present, multiple witnesses, including the victim, placed defendant at DeJean's residence at the time of the incident. Therefore, the trial court did not abuse its discretion in finding Mr. Olasky's testimony inadmissible. Defendant failed to proffer and make known the substance of the alleged excluded evidence and further failed to show that the alleged exclusion affected a substantial right.

In his third assignment of error, defendant argues that the non-unanimous verdicts returned on counts one and two are in violation of his Sixth and Fourteenth Amendments rights. Defendant concedes that at the time the offenses occurred and at the time of the trial, Louisiana Constitution art. 1, §17 A and La. C.Cr.P. art. 782A provided for non-unanimous verdicts in those cases where punishment was necessarily confinement at hard labor. Defendant argues that nonetheless, the 2018 amendments to Louisiana Constitution art. 1, §17 A and La. C.Cr.P. art. 782 A should apply retroactively in this case and that the non-unanimous verdicts are violations of his due process and equal protection rights.

In State v. Jacobs, 07-887 (La. App. 5 Cir. 05/24/11), 67 So.3d 535, 591, writ denied, 11-1753 (La. 02/10/12), 80 So.3d 468, cert. denied, 568 U.S. 838, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012), this Court found that the defendant did not have standing to challenge the constitutionality of La .C.Cr.P. art. 782 A because he was convicted by a unanimous jury verdict on both counts. Here, defendant has standing to raise the constitutionality of non-unanimous jury verdicts as the record reflects he was convicted by non-unanimous verdicts on both counts; however, the record indicates that defendant did not raise this issue in the trial court. Defendant did not file any motion challenging the constitutionality of the statutes nor did he object to the jury instruction that ten jurors were required to agree in order to convict him.

Where a statute is alleged to be unconstitutional, the Louisiana attorney general must be served with a copy of the proceeding and given the opportunity to

be heard. La. C.C.P. art. 1880. While there is no single procedure for attacking the constitutionality of a statute, the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. State v. Napoleon, 12-749 (La. App. 5 Cir. 05/16/13), 119 So.3d 238, 245. A constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below. State v. Hatton, 07-2377 (La. 07/01/08), 985 So.2d 709, 718.[18] As such, defendant cannot raise this issue on appeal.[19]

In his fourth assignment of error, defendant argues that his January 6, 2014 guilty pleas in district court case number 12-0652 for distribution of cocaine in a drug-free zone (count one) and possession of cocaine (count three) were tendered pursuant to State v. Crosby, 338 So.2d 584 (1976), and are invalid for sentence enhancement purposes. Defendant asserts that he pled guilty to those counts with a reservation of his right to appellate review of his motion to suppress, and no motion to suppress was ever held on those charges. He contends that the trial court's failure to rule on the motion rendered his pleas invalid as he was not afforded the appellate review he bargained for as part of his plea agreement.

Prior to the habitual offender hearing, defendant filed objections, contending that in district court case number 12-0652, he pled guilty under Crosby, supra, to three counts,[20] and because the trial court never ruled on his pre-trial motion to

---

[18] The Louisiana Attorney General was notified of this assignment of error by this Court and as of the date of this opinion has not responded.

[19] Nonetheless, the provisions of Act No. 722 of the 2018 Ordinary Session, which amends La. Const. art. 1, § 17(A); and Act No. 493 of the 2018 Ordinary Session, which amends La. C.Cr.P. art. 782 A, each contain clear and unambiguous language that the requirement of unanimous jury verdicts for crimes punishable necessarily by confinement at hard labor applies only in those cases when the offenses are committed on or after January 1, 2019. Before these amendments, and at the time of the offenses in this case, the constitutionality of non-unanimous jury verdicts was upheld in both State v. Bertrand, 08-2215 and 08-2311 (La. 03/17/09), 6 So.3d 738 and Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). As an intermediate court, we are bound by that precedent. State v. Williams, 18-112 (La. App. 5 Cir. 11/7/18), 259 So.3d 563, 580.

[20] The guilty plea transcript from district court case number 12-0652 reflects that on January 6, 2014, defendant pled guilty to distribution of a controlled dangerous substance within 2,000 feet of a school (count one), attempted felon in possession of a firearm (count two), and possession of cocaine (count three).

---

suppress, he did not receive the benefit for which he entered the plea bargain.[21] He contended that as a result, his guilty pleas were not knowingly and voluntarily entered under Boykin,[22] and thus the two guilty pleas the State intended to use as predicates from district court case number 12-0652 were deficient. At the habitual offender hearing, defense counsel asserted that defendant was not contesting his identity as the perpetrator of the three predicate convictions alleged by the State and stipulated to defendant's predicate conviction in district court case number 10-4879, a 2010 conviction for possession of cocaine, in violation of La. R.S. 40:967 C. At trial, a stipulation was also entered by the parties that defendant was the same person who pled guilty to possession of cocaine in district court case number 12-0652.

At the October 12, 2017 habitual offender hearing, the trial court held that defendant entered valid pleas in district court case number 12-0652, and defendant's plea bargain was not affected by the fact that he chose not to appeal pursuant to Crosby. After argument of counsel and review of the evidence, the trial court found defendant to be a fourth-felony offender on counts one and two.[23]

In order to prove that a defendant is a habitual offender, the State must establish by competent evidence defendant's prior felony convictions and that defendant is the same person who was convicted of the prior felonies. State v. Woods, 09-399 (La. App. 5 Cir. 03/09/10), 38 So.3d 391, 398, writ denied, 10-784

---

[21] A defendant may be allowed appellate review if at the time he enters a guilty plea, he expressly reserves his right to appeal a specific adverse ruling in the case. Crosby, supra; State v. Williams, 18-137 (La. App. 5 Cir. 09/19/18), 254 So.3d 1260, 1265-66. Under Crosby, a defendant may reserve his right to appeal a prior adverse ruling of the trial court. Absent specification of the specific adverse ruling, the Louisiana Supreme Court has held that an appellate court should presume that the Crosby reservation preserves review of those evidentiary rulings which go to the heart of the prosecution's case, such as the denial of a motion to quash, and not rulings that may affect the conduct of the trial but do not substantially relate to guilt. See State v. Dillon, 11-0188 (La. App. 4 Cir. 08/24/11), 72 So.3d 473, 474 (where court considered the denial of the defendant's motion to quash on appeal after he pled guilty pursuant to Crosby).

[22] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

[23] Defense counsel stated that defendant was not contesting his identity as the perpetrator of the three predicate convictions alleged by the State. Defense counsel also stipulated to defendant's predicate conviction in district court case number 10-4879, a 2010 conviction to possession of cocaine, in violation of La. R.S. 40:967 C. At trial, a stipulation was entered that defendant was the same person who pled guilty to possession of cocaine in district court case number 12-0652, and an excerpted certified conviction packet for district court case number 12-0652 was admitted into evidence.

(La. 10/29/10), 48 So.3d 1096. In addition, when a defendant's habitual offender status is based on guilty pleas in the predicate convictions, the State has the burden of proving the defendant was represented by counsel when the guilty pleas were entered. Id.; State v. Shelton, 621 So.2d 769, 779 (La. 1993).

If the State meets its burden of proof, then the burden shifts to the defendant to produce some affirmative evidence of an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant meets this burden, then it shifts back to the State to prove the constitutionality of the plea by producing a perfect transcript, which shows that the defendant's waiver of his Boykin rights was voluntary, informed, and express. If the State produces anything less than a perfect transcript, such as a guilty plea form, minute entry, or imperfect transcript, the trial court must weigh the evidence to determine whether the defendant's prior plea was both knowing and voluntary. Woods, supra; Shelton, supra.

Based on the above facts and stipulations, the State's burden at the habitual offender hearing was only to show the existence of the 2014 guilty pleas for distribution of cocaine within 2,000 feet of a drug-free zone and possession of cocaine in district court case number 12-0652. The State met its burden by the documentary proof introduced at the hearing. Attached to the State's response to defendant's objections to the habitual offender bill was a copy of the transcript from defendant's guilty pleas and sentencing in district court case number 12-0652 as well as the sentencing minute entry and waiver of rights form. The transcript, sentencing minute entry, and waiver of rights form reflect that (1) defendant pled guilty; (2) defendant was represented by counsel at the time of his plea; (3) defendant was advised of his Boykin rights and the waiver of those rights by pleading guilty; (4) defendant was aware of the crimes to which he was pleading guilty; (5) defendant waived his rights; (6) defendant admitted he was guilty of those crimes; and (7) defendant denied that he was forced or coerced into entering his pleas.

Defendant argues that his Crosby guilty pleas to distribution of cocaine within 2,000 feet of a drug-free zone and possession of cocaine are invalid for the purposes of sentence enhancement. In support, defendant relies on State v. Frazier, 92-1101 (La. App. 5 Cir. 02/12/93), 618 So.2d 1217. Defendant does not argue that he was not properly Boykinized or any other infringement of his rights occurred in the taking of the pleas. However, there is nothing in the record indicating that defendant appealed his convictions in district court case number 12-0652. Defendant now challenges those guilty pleas from district court case number 12-0652 as constitutionally infirm for purposes of sentencing enhancement. Because Frazier did not involve a habitual offender proceeding, it is therefore not applicable to the present case.

Further, defendant is incorrect in his assertion that the trial court failed to rule on a motion to suppress. Here, defendant specifically reserved his right to seek an appeal of the denial of a motion to quash, which was ruled upon prior to the acceptance of defendant's guilty pleas. The transcript reflects that at the beginning of the proceeding in district court case number 12-0652, defense counsel indicated that defendant would be entering pleas under Crosby, and therefore, wanted to submit on defendant's motion to quash for the trial court to rule. The deputy clerk asked whether the motion to quash was on count two, which defense counsel confirmed, indicating that the motion was filed in March, and "[w]e've never done motions in this case." The trial court recalled seeing the motion, and defense counsel elaborated "[t]hat's the 95.1 motion. The reason I would like to submit on it and do the Crosby plea is because when the Supreme Court came back, they actually left it open . . . For whether or not someone – on the 10-year cleansing period, they only ruled on someone on probation or parole." The trial judge commented that she understood the argument and denied the motion to quash the indictment as to count two.

During the proceeding, defense counsel indicated that defendant sought to enter his guilty plea on count two under Crosby, supra. However, portions of the guilty plea and sentencing transcript, as well as the sentencing minute entry from district court case number 12-0652, reflect that all three counts were entered under Crosby. [24] The waiver of rights form also contains a handwritten notation next to the title of the form reading "under Crosby."

Therefore, we find defendant tendered guilty pleas pursuant to Crosby, supra, on both of his 2014 predicate convictions, but find that his Crosby pleas were not based on preserving review of a ruling as to a motion to suppress. A defendant waives his outstanding pre-trial motions by pleading guilty when the trial court does not hear or rule on a pre-trial motion, and the defendant does not object prior to pleading guilty. State v. Kelly, 17-221 (La. App. 5 Cir. 12/29/17), 237 So.3d 1226, 1233; State v. Corzo, 04-791 (La. App. 5 Cir. 02/15/05), 896 So.2d 1101, 1102.

Accordingly, we find defendant failed to present any evidence of an infringement of his rights or an irregularity in the proceedings, and the State's evidence to show that defendant was represented by competent counsel when he pled guilty to distribution of cocaine within 2,000 feet of a drug-free zone and possession of cocaine is sufficient under Shelton, supra. Defendant's adjudication as a fourth-felony offender is proper.

In his only *pro se* assignment of error, defendant argues that his habitual offender adjudication is invalid since the State enhanced his sentences with the non-existent crime of distribution of cocaine within 2,000 feet of the Harold McDonald Senior Center. He does not dispute that distributing cocaine near schools or drug treatment facilities is a violation under La. R.S. 40:981.3 or could serve as a

---

[24] Defense counsel asked the trial court to note her objection to the denial of the motion to quash and stated that defendant would be entering his plea under Crosby. Based on the transcript, it appears defense counsel intended to enter a Crosby plea on the denial of the motion to quash as to count two, which was not used as a predicate conviction in this case. However, in imposing defendant's sentences, the trial court stated that it was accepting his "plea of guilty, and you're pleading guilty under Crosby, and your sentence will not be deferred" and then the court sentenced defendant on count one, then the remaining two counts.

predicate offense. Rather, he argues that La. R.S. 40:981.3 does not contain under its definition that it is punishable to distribute controlled dangerous substances near a senior center. As a result, he argues his predicate guilty plea and plea agreement were invalid, and his multiple offender adjudications and sentences must fall.

Defense counsel argued at the habitual offender hearing that the bill of information in district court case number 12-0652 was jurisdictionally defective since defendant was charged with "being in front of a senior center," and "senior centers are not enumerated drug-free zones anywhere in the statutes." The State responded that the Harold McDonald Senior Center is a park in Westwego, and parks clearly fell within an enumerated drug-free zone under the statute. The State further argued that defense counsel's argument was without merit as defendant pled guilty to the crime, and there was a factual basis for the plea. The trial court denied defense counsel's objections.

Pursuant to La. R.S. 15:529.1 A, a habitual offender is "[a]ny person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state."

The State proved at the habitual offender hearing that defendant was previously convicted of distribution of cocaine within 2,000 feet of a drug-free zone, a felony cognizable under the laws of Louisiana. La. R.S. 40:981.3 is a sentence enhancement provision for certain drug offenses committed within a specified proximity of designated drug-free zones.[25] Louisiana courts have held that a

---

[25] La. R.S. 17:405 A(1) defines "drug free zone" as:
 (a) An area inclusive of any property used for school purposes by any school.
 (b) An area within two thousand feet of any property used for school purposes by any school.
 (c) A school bus.
 (d) Any building or area owned by the state or by a political subdivision and used or operated as a playground or recreational facility.
 (e) Any park or recreational area administered by the state.
 (f) Any building owned by any quasi public agency or body as defined in R.S. 24:513 A(1)(b) and used or operated as a community center.

location's status as a drug-free zone is an essential element of the offense under La. R.S. 40:981.3. See State v. Beason, 16-195 (La. App. 5 Cir. 12/07/16), 204 So.3d 1206.

Defendant now argues that distributing drugs near a senior center is not "criminalized" under La. R.S. 40:981.3. In the bill of information in district court case number 12-0652, the State charged defendant with distributing cocaine within 2,000 feet of Harold McDonald Senior Center.[26] A senior center does not clearly fall within any definition of a "drug free zone." However, the transcript of the guilty plea colloquy in district court case number 12-0652 contains a factual basis stated by the State for the charge before defendant's guilty plea was accepted. In its factual basis, the State indicated that on June 15, 2011, defendant distributed a controlled dangerous substance within 2,000 feet of a school located in Jefferson Parish. Defendant admitted that the incident occurred, and he was pleading guilty because he was in fact guilty. The trial court then accepted defendant's plea in district court case number 12-0652. Therefore, defendant's argument that he pled guilty to distributing a controlled dangerous substance in an area not "criminalized" by the statute is misplaced as he admitted he distributed a controlled dangerous substance near a school.[27]

To prove that a defendant is a habitual offender, the State must establish by competent evidence defendant's prior felony convictions and that defendant is the same person who was convicted of the prior felonies. Woods, 38 So.3d at 398. In addition, when a defendant's habitual offender status is based on guilty pleas in the

---

(g) Any public housing dwelling.
(h) Any area inclusive of any property used for a full-time day care center.
(i) Any area within two thousand feet of any property used for the purposes of a full-time day care center.

[26] The State's habitual offender bill of information alleged that defendant pled guilty to distribution of cocaine within 2,000 feet of a drug-free zone.

[27] A plea of guilty by its nature admits factual guilt and relieves the State of the necessity to prove it by a contested trial. State v. Ferrera, 16-243 (La. App. 5 Cir. 12/14/16), 108 So.3d 1060, 1066

predicate convictions, the State has the burden of proving the defendant was represented by counsel when the guilty pleas were entered.  Id.; Shelton, supra.

Defendant's argument that he pled guilty to distribution of drugs in an area not "criminalized" by La. R.S. 40:981.3 is misplaced as defendant admitted he distributed a controlled dangerous substance near a school prior to pleading guilty. We find the State presented competent evidence at the hearing that defendant was a fourth-felony offender.

**ERROR PATENT DISCUSSION**

The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990).  The following requires corrective action.

Defendant was convicted of simple kidnapping as a responsive verdict to the charge of second degree kidnapping in conformity with the trial court's instructions. A nonresponsive verdict is "error patent on the face of the record and therefore reviewable on appeal despite absence of an objection during trial."  State v. Campbell, 95-1409 (La. 03/22/96), 670 So.2d 1212, 1213; State v. Mayeux, 498 So.2d 701 (La. 1986); State v. Turnbull, 377 So.2d 72 (La. 1979).

The legislature has provided no statutorily authorized responsive verdicts to the crime of second degree kidnapping in La. C.Cr.P. art. 814; therefore, La. C.Cr.P. art. 815 applies by its plain language.[28]  Recently, the Louisiana Supreme Court held that a verdict of guilty of simple kidnapping is not responsive to a charge of second degree kidnapping under La. C.Cr.P. art. 815 and remanded the case for the trial court to enter a post-verdict judgment of acquittal on the count of second degree kidnapping.  See State v. Price, 17-0520 (La. 06/27/18), 250 So.3d 230. See also

---

[28] La. C.Cr.P. art. 815 provides:
In all cases not provided for in Article 814, the following verdicts are responsive:
    (1)     Guilty;
    (2)     Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
    (3)     Not Guilty.

State v. McGhee, 17-1951 (La. 09/21/18), 252 So.3d 895 (Louisiana Supreme Court, in a *per curiam* opinion, reaffirmed its ruling in Price).[29]

In Price, the court found that there were ten ways second degree kidnapping could be committed without perpetration of simple kidnapping. Price, 250 So.3d at 233. Therefore, it held that a verdict of guilty of simple kidnapping could not be responsive to a charge of second degree kidnapping as required by La. C.Cr.P. art. 815. Id. The court held that the jury's return of the non-responsive verdict was an implicit acquittal of the crimes charged and the matter was remanded for the trial court to enter a post-verdict judgment of acquittal on the five counts of second degree kidnapping. Id. at 235.

Therefore, we find that we are constrained to follow the decisions of Price and McGhee and vacate defendant's conviction and sentence for simple kidnapping. Accordingly, we remand this matter to the trial court for it to enter a post-verdict judgment of acquittal on the count of second degree kidnapping. Further, we vacate defendant's adjudication and sentence as a habitual offender on count one.[30]

**DECREE**

For the reasons stated above, we affirm defendant's conviction, habitual offender adjudication as a fourth-felony offender, and enhanced sentence on count two, attempted simple robbery. Based on our error patent review, we vacate defendant's conviction, habitual offender adjudication as a fourth-felony offender,

---

[29] See State v. McGhee, 15-285, 2019 WL 361928 (La. App. 3 Cir. 01/20/19) wherein the appellate court set aside the defendant's conviction for simple kidnapping and remanded the matter to the trial court for entry of a post-verdict judgment of acquittal on the charge of second degree kidnapping. In State v. McGhee, 15-286, 2019 WL 361889 (La. App. 3 Cir. 01/30/19), the appellate court vacated the defendant's life sentence as a habitual offender. See also, State v. Robinson, 52,308 (La. App. 2 Cir. 11/28/18), 259 So.3d 1244, wherein the Second Circuit found the holdings of Price and McGhee controlling after the defendant was charged with second degree kidnapping, and the jury returned a verdict of simple kidnapping in conformity with the trial court's instructions. Robinson, 259 So.3d at 1245. It found that those two cases were indistinguishable from Robinson as they all involved forcibly seizing and carrying the victim from one place to another and found that both Price and Robinson involved use of a dangerous weapon in a commission of the kidnapping. Therefore, it vacated the defendant's conviction and sentence and remanded the case for the trial court to follow the procedure of Price, supra, to enter a post-verdict judgment of acquittal as to the count of second degree kidnapping. Id. at 1248-49.

[30] Defendant was adjudicated as a fourth-felony offender on count two also, and his adjudication and sentence as a fourth-felony offender on count two remains intact and is affirmed.

18-KA-362                              21

and enhanced sentence on count one, simple kidnapping.  We further remand this case for the trial court to enter a post-verdict judgment of acquittal on count one.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND ENHANCED SENTENCE ON COUNT TWO AFFIRMED; CONVICTION, SENTENCE, HABITUAL OFFENDER ADJUDICATION, AND ENHANCED SENTENCE ON COUNT ONE VACATED; REMANDED FOR FURTHER PROCEEDINGS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JUNE 19, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____

**MARY E. LEGNON**
INTERIM CLERK OF COURT

## 18-KA-362

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
TERRY M. BOUDREAUX (APPELLEE)          CYNTHIA K. MEYER (APPELLANT)          COLIN CLARK (APPELLEE)
THOMAS J. BUTLER (APPELLEE)

### MAILED

DERRICK A. FORD, JR. #578127
(APPELLANT)
DIXON CORRECTIONAL INSTITUTE
P. O BOX 788
JACKSON, LA 70748

HON. JEFFREY M. LANDRY (APPELLEE)
ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 NORTH 3RD STREET
6TH FLOOR, LIVINGSTON BUILDING
BATON ROUGE, LA 70802

HON. PAUL D. CONNICK, JR. (APPELLEE)
ZACHARY P. POPOVICH (APPELLEE)
DOUGLAS E. RUSHTON (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053